**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | NO.  12 CR 447-1 |
| | ) | |
| RAGHUVEER NAYAK, | ) | HON. ROBERT W. GETTLEMAN |
| | ) | DISTRICT JUDGE |
| Defendant. | ) | |

**RAGHUVEER NAYAK'S POSITION PAPER ON SENTENCING FACTORS**

Defendant, RAGHUVEER NAYAK, by his attorneys, respectfully submits his position as to the sentencing factors which should be considered by the Court in imposing sentence. Initially, Mr. Nayak will identify a number of inaccurate or improper statements within the context of the Presentence Investigative Report which we believe the Court should strike or have corrected. We will then address the issues of the appropriate Guidelines to be used for the mail fraud charge, whether advertising expenses are appropriately added as relevant conduct to that Guideline calculation and, with the Guideline calculation respecting the tax charge, our objection to consideration of the more than $700,000 the government asserts should be included in the tax loss calculation when its evidentiary source is Rajinder Bedi, an immunized witness, who will be presented by the government at the sentencing hearing.

1.  **The Presentence Report.**

As reflected in the Presentence Report, the written Plea Agreement and the proceedings before this Court in September, the Defendant has completely and unequivocally entered a plea of guilty to a mail fraud charge relating to a scheme to pay cash to various doctors in return for their referral of patients to one or another of his

many surgery centers in the greater Chicagoland area in Count 1 of the Superceding Information. Furthermore, he has clearly admitted that, in making those payments, he had an obligation to provide the receiving doctors with a Form 1099 and his failure to provide that obstructed the ability of the Internal Revenue Service to collect appropriate taxes as alleged in Count 2.

The Presentence Report generally presents the Defendant's background in business during his more than 35 years in Chicago. As the Court and the parties know, the Presentence Report follows the Defendant after the ultimate imposition of sentence and, for that reason, errors or inclusion of improper material should be corrected or stricken before imposition of sentence.

Paragraph 10

In the PSI, the FBI Special Agent purports to support the government's version in the last sentence of the paragraph simply by repeating what it says and adding that there was a problem with "a change in insurance billing procedures." We are at a loss to understand the support for this last statement. All in all, the balance of the sentence is repetitive, not supported by evidence and should be stricken before imposition of sentence.

Paragraph 12

The first two sentences of Paragraph 12 should be stricken. The Special Agent's statement here corresponds to an interview in November 2007 of a confidential source. We have had access to several interview memoranda of the confidential source. Much of what is said is speculation, hearsay and hearsay upon hearsay. It is true that the confidential source was sent to meet with Mr. Nayak while wearing a wire, as were several other people, but it is equally true that the government obtained no relevant

evidence in support of the charges here in those recorded encounters. The suggestion that the 2007 confidential source information started this investigation is really inaccurate. This investigation started in full force in the fall of 2010 when the government began interviewing doctors and accusing them of receiving cash or other improper kickbacks to refer patients to Mr. Nayak's facilities. When those interviews did not produce fruit, the government early in 2011 began immunizing physicians until each of the nine (9) physicians referenced in the Government's Version and its sentencing memoranda were immunized from prosecution. Then, and only then, did their staunch denials become admissions. These sentences should be stricken.

Paragraph 16.

The Special Agent makes a number of statements which are inaccurate or only partially accurate. There is absolutely no evidence in this case that Mr. Nayak was implicated in any unnecessary medical surgeries being performed at his surgicenters. Furthermore, the agent's efforts to make it appear as though "out-of-network" centers are somehow fraudulent is patently silly. Patients seeking medical care on a daily basis face issues of in-network and out-of-network physicians and facilities. As the government well knows from its search of Mr. Nayak's facilities, a sign posted at the facility gives notice that the surgery center was not an in-network facility and the patients were provided a "Patient Accommodation Agreement" which, among other things, clearly stated that the facility was out-of-network. Copies of several of these documents executed by the very patients who were Count victims in the original Indictment are attached hereto as Exhibit 1. As for the agent's example of a woman who had a credit check done and purportedly found a claim from the surgicenter, documents

produced in discovery reflect that that patient's claim was actually filed by her surgeon. Exhibit 2.[*] These statements should be stricken.

<u>Paragraphs 21, 100 and 102</u>.

Several places in the PSR, as the description of the Defendant's assets are being discussed in these paragraphs, the Probation Officer suggests that Mr. Nayak failed to complete his financial production as required under the Plea Agreement. As the Court is well aware, Mr. Nayak has an extensive network of medical businesses and ownership of a multitude of properties in the greater Chicagoland area. He used his best efforts to provide two full boxes of materials responsive to the officer's requests for tax returns, bank statements, personal financial statements and financial documents of each of his businesses. More than $27,260,000 worth of investments, businesses and real property, have been identified on a personal financial statement. But, admittedly, a 25-year old $10,000 investment has not been included on the statement although the existence of its K-1 is noted in the produced tax returns. Further, there is no reference to a $6,000 investment in property in India from nearly 35 years ago. We hardly believe it fair to say that Mr. Nayak presented materially incomplete information during the course of the presentence investigation process based upon these examples.

<u>Paragraph 72</u>.

A parenthetical here suggests that Mr. Nayak's eldest son "commenced" the West Coast company Dropbox. This should be corrected to say that fellow former MIT students asked his son to join them when they commenced the business.

---

[*] It should be noted that several of the Count victims in the Original Indictment may have been subjected to collection efforts because they failed to forward their insurance carrier's payment for the surgicenter expenses.

4

Paragraph 98.

The three sentences in the center of this paragraph purporting to be statements by the FBI Agent should be deleted. It is not true that Edgewater Medical Center was a defendant in Case Number 01 CR 469 (Judge Conlon). The two corporate defendants in that criminal prosecution were Bainbridge companies. While Edgewater Medical Center has been the defendant in more than 20 pieces of civil litigation in this district, it was not a criminal defendant. It is also not accurate that Mr. Nayak was interviewed in connection with the investigation that lead to the indictment of four physicians and the ownership entities at what was then known as Edgewater Hospital. In the hundreds of thousands of documents which the government has produced, there is no indication that any statement was taken from Mr. Nayak in that investigation. For these reasons, these three sentences should be stricken.

**2.     The Mail Fraud – Honest Services-Guidelines Calculations.**

A.     Applicable Guideline.

The first step in any Guidelines analysis is to ascertain the statute of conviction as found in the Appendix and go to the referred Guideline. Both mail fraud and wire fraud identify Section 2B 1.1 or 2C 1.1 as the appropriate Guidelines. The Defendant's position that the essence of the offense in Count I of the Information to which he has pled guilty is fraud to be sentenced under 2B1.1. Fraud can occur where a fraudulent scheme leads to the taking of money or property or in accordance with 18 U.S.C. § 1346, where the fraudulent scheme involves the fraudulent deprivation of honest services. In 2010, the United States Supreme Court in *Skilling v. United States*, 561 U.S. ___ (2010) explicitly limited the scope of prosecutions under the honest services theory to those fraud schemes that included a bribe or a kickback.

At no time since the *Skilling* decision has the U.S. Sentencing Commission added 18 U.S.C. §§ 1341 and 1343 to Guideline Section 2B4.1. Rather, 2B4.1 is to be used for 18 U.S.C. §§ 215 and 224 involving non-governmental bribes and sporting contest bribes which clearly fit within the Application Note at paragraph 1: "This guideline covers commercial bribery offenses and kickbacks that do not involve officials of federal, state, or local governments, foreign governments or public international organizations." Also cited under 2B4.1 are the anti-kickback statutes governing Medicare and Medicaid (42 U.S.C. §§ 1395nn(b)(1),(2) and 1396h(b)(1),(2). The very essence of those offenses is, indeed, bribery, because that is the act that is specifically identified in those respective statutes.

Several of the cases cited by the government in support of use of 2B4.1 are those that have been prosecuted under the Anti-Kickback Act and so there should be no question that 2B4.1 is the applicable Guideline. *See, e.g.*, *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008), *United States v. Borrasi*, 639 F.3d 774, 782 (7th Cir. 2011) and *United States v. Jain*, 93 F.3d 436 (8th Cir. 1996) (affirming use of 2B4.1 for anti-kickback statutory convictions, but reversing honest services fraud convictions outright). Further, *United States v. Lanas*, 324 F.3d 894 (7th Cir. 2002) relied upon Guideline 2F1.1, Commentary (n.14) to support its decision to use 2B4.1, but that guideline has since been deleted. Similarly, the court in *United States v. Montani*, 204 F.3d 761 (7th Cir. 1999), relied upon Guideline Section 1B1.2(a) in concluding that bribery, rather than the fraud guideline, was more accurate. Again that Guideline section has since been deleted.

The statement of Section 2B1.1 directing that conduct set forth in the count of conviction which establishes an offense specifically covered by another guideline, should

6

have that Guideline applied is found at Cross-References (c)(3).  However, the example given at Application Note 15 for Cross Reference subsection (c)(3) is as follows:

> For example, a state employee who improperly influences the award of a contract and used the mails to commit the offense may be prosecuted under 18 U.S.C. § 1341 for fraud involving the deprivation of the intangible right of honest services.  Such a case would be more aptly sentenced pursuant to Section 2C1.1. . .

involving public official bribery.  This reference to Section 2C1.1 for intangible rights to honest services violations by public officials is again cited in 2B4.1 at Application Note 2.  Further, Section 2B4.1 provides:  "<u>Background</u>:  This Guideline applies to violations of various federal bribery statutes that do not involve government officials."

We submit that 18 U.S.C. § 1341 is not a "federal bribery statute" and therefore 2B4.1 is not the applicable Guideline and Base Offense Level for use in this case.

    B.    <u>Relevant Conduct for Advertising Expenses</u>.

We take issue with the 18 point loss increase proposed by the government and confirmed by the Probation Department substantially enhanced by the inclusion of advertising expenses.  We do not contest that Mr. Nayak's plea and the terms of his Plea Agreement cover cash bribes between approximately $85,000 and $150,000.  But the Court will note from carefully reviewing the Plea Agreement, that not one of the many paragraphs of misconduct to which Mr. Nayak knowingly and voluntarily entered his plea of guilty is there so much a reference to advertising.  Rather, sentence after sentence referred to the improper use of cash to obtain referrals to his surgery centers.  He acknowledged that repeatedly in signing the Plea Agreement and entering his plea.

Now, the government asserts that the cost of advertising that was split between Mr. Nayak's centers and four of the immunized doctors, should be counted as relevant conduct.  Simply put, the government appears to have back-filled conduct that was not a

part of his plea and Plea Agreement to substantially increase the Defendant's sentence. The Court also knows, with respect to the tax charge, the parties explicitly agreed to disagree in Paragraph 7 of the Plea Agreement as to whether an additional $700,000 in tax loss could be considered as relevant conduct based upon the presentation of testimony of Rejinder Bedi. It was and has always been our position that the immunized Mr. Bedi is a liar, a crook and, based upon his testimony in two prior cases in the federal courthouse, likely a perjurer. We firmly believe that, after an airing of his testimony and particularly cross-examination focusing upon his veracity and credibility, the Court will conclude that his story of returning $1.2 million in cash to Mr. Nayak totally lacks credibility.

What is more, if the government intended to preserve the ability to present the Bedi testimony before the Court as relevant conduct as evidenced by Paragraph 7 of the Plea Agreement, why wasn't there a similar paragraph stating clearly that the government's mail fraud honest services position would include as relevant conduct advertising expenses. Indeed, in the government's proposed Guideline calculation in the Plea Agreement it opined that it believes that the honest services relevant loss exceeded $400,000. Now, they say it exceeds $3.2 million. The advertising expenses ought not be considered as relevant conduct in the calculation of the honest services fraud Guideline.

### 3. Tax Fraud – Relevant Conduct

As we have already indicated above, the government reserved in Paragraph 7 of the Plea Agreement the right to present testimony to the Court which they believe will establish that the tax Guidelines have an additional $700,000 in tax loss in its ultimate calculation. That position, rest squarely on the shoulders of the testimony of Rejinder

8

Bedi and the accuracy of the calculations of the IRS Revenue Agent which calculations have been driven by the statements of Mr. Bedi. We intend to contest the reliability of Bedi and, thus, the accuracy of the analysis of the IRS calculations. Therefore, under Section 2T1.1(c)(1)(A), it is Mr. Nayak's position that the applicable 2T4.1 tax loss is (D), more than $12,500 (the government's calculation being approximately $28,800), or a total offense level of 12.

We agree with the government and the Probation Department that these two offenses are not properly grouped. Based upon the Court's decision regarding the use of 2B1.1 or 2B4.1, there will be a difference in the base offense level of 7 or 8, respectively. We do not contest the payment of more than $86,000 in cash to physicians, the increase under either 2B1.1 or 2B4.1 would be 8 points (for a total of 15/16) rather than the 18 points driven by the government's position on advertising resulting in a total offense level of 27.

### 4. Defendant is Entitled to an Adjustment for Acceptance of Responsibility.

Mr. Nayak has spread of record his admission of violating the mail fraud statute by making cash payments to various doctors and by knowingly failing to provide the Internal Revenue Service with appropriate notice of those payments. The government cites *United States v. Gordon*, 495 F.3d 427, 431 (7th Cir. 2007) for the proposition that a reduction under Section 3E1.1 should not be offered where the defendant denies relevant conduct in the face of reliable evidence or otherwise frivolously contests relevant conduct. We believe that we have, in good faith, recounted our positions with respect to the Bedi relevant conduct in the tax count and the advertising relevant conduct in the fraud count. The former will only be in a position to be decided after the

9

witness has testified and been cross-examined before this Court. We respectfully suggest that the Court will certainly not find that our position respecting the credibility of Mr. Bedi has been a frivolous one such that acceptance of responsibility is not available.

    **5.**     **Sentencing Considerations**

    A.     <u>The Post-*Booker* Era of Sentencing</u>.

Designed as being mandatory under the Sentencing Reform Act of 1984, the Federal Sentencing Guidelines were rendered advisory by the Supreme Court in its decision in *United States v. Booker*, 543 U.S. 220 (2005). The sentencing court's ultimate sentence is to be derived from the Court's analysis of the statutory 18 U.S.C. § 3553(a) sentencing factors underpinning the Federal Sentencing Guidelines. In that analysis, several factors are of import including the defendant's age, his lack of any prior involvement with the criminal justice system, and the low risk of recidivism that he presents as he is sentenced. The Court's responsibility, as it well knows, is to establish a sentence which is "sufficient, but not greater than" that which is necessary to reflect the sentencing purposes of Section 3553(a).

In the post-*Booker* world, the trial court is recognized as being in a "superior position" to make an assessment applicable to the facts of the case and the individual defendant in determining the ultimate sentence and particularly whether a variance from the Guidelines recommendation is appropriate. *Gall v. United States*, 552 U.S. 38 (2007). As the Court in *Gall* recognized, there is no longer a need for extraordinary circumstances existing for the sentencing judge to impose a non-Guidelines sentence. The focus of the Court is upon the "reasonableness" of the sentence imposed. *Gall v. United States*, 552 U.S. 38, 128 (2007).

B.  Section 3553(a) Considerations

The Court may sentence inside or outside the Guidelines range at its discretion, as long as all of the factors of Section 3553(a) have been considered. It is the Court's duty, indeed, to "make its own reasonable application of the Section 3553(a) factors, and to reject (after consideration of) the advice of the Guidelines" if the result of what the Guidelines suggests does not comport with the sentencing Court's views of an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J. concurring). Thus, the sentencing courts once again enjoy sentencing discretion in the post-*Booker* world. *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005).

The factors listed in 18 U.S.C. § 3553(a) include: (1) the history and characteristics of the defendant and the nature and circumstances of the offense; (2) the need to provide just punishment; (3) the need to provide adequate deterrence; (4) the need to protect the public; and (5) the need to provide treatment to the defendant.

The sentencing Court has discretion to determine what weight to place upon each of these statutory factors. *See United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006) ("the statute does not weigh the factors. . . that is left to the sentencing judge, within the bounds of reason, which are wide.") Recently, the United States Supreme Court has emphasized that sentencing courts should impose a punishment that "fit[s] the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011).

**1.  Mr. Nayak's Personal History, Characteristics and the Offense**

Section 3553(a)(1) requires that the Court consider the nature and circumstances of the offense together with the history and characteristics of the

Defendant.  Mr. Nayak[*] comes before the Court with an otherwise unblemished record and a record of fine performances academically and in this business world.  *See United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (history and character of the defendant are grounds for a reduced sentence that meets the purposes of sentencing under Section 3553(a)).  His background will be more clear from letters we will shortly be providing the Court.

There can be no question that the offenses to which Mr. Nayak has entered this plea are serious ones.  Tragically, his inability to withdraw himself from this scheme with a very limited number of the physicians using his facilities now places the future of those facilities in question.  That having been said, it is important that the Court focus on the sentence that gives Mr. Nayak a reasonable opportunity to re-energize and maintain these businesses.

### 2.  Section 3553(a)(2)(A)

The next consideration of the Court is to impose a sentence which will reflect the seriousness of the offense and promote respect for the law as well as provide just punishment for the offense.  The Advisory Guideline calculation in this case yields under the government's theory, but with acceptance, a range of 51 to 63 months incarceration.  We respectfully suggest that a downward departure is appropriate in this case (or a variance) as provided in Application Note 19(C) to Guidelines Section 2B1.1(b)(18)(B)(ii).  The Application Note makes clear that it is appropriate for the Court to consider a downward departure where the Guideline calculation "substantially overstates the seriousness of the offense."  App.Note 19(C).  Here a fair consideration is

---

[*] At pages 20 – 23 of the Government's Position Paper, the government addresses Mr. Nayak's role in Rep. Jackson's effort to become U.S. Senator.  We will directly address this issue at sentencing.

one which focuses upon the offense as a microcosm of the entirety of Mr. Nayak's businesses – businesses all but neutered by these charges and his guilty plea.

### 3. Section 3553(a)(2)(B)

Next, the Court is to consider a sentence which affords adequate deterrence to the criminal conduct. In the case at bar, the lesson learned by the dramatic damage to his years of business growth from his conduct and his plea in this case reflect substantial deterrence to the Defendant himself.

### 4. Section 3553(a)(2)(C)

Next, the Court is to consider a sentence which will protect the public from further crimes of this defendant. Again, we suggest that the defendant's own actions in pleading guilty is evidence that there is little basis for concern about recidivism.

### 5. Section 3553(a)(2)(D)

Finally, the Court is required to consider a sentence that will provide the defendant with training or treatment in the most effective manner. In the case at bar, we have a college graduate who certainly needs none of the educational or vocational training that might otherwise be considered by the Court. What should seriously be considered by the Court is a recommendation that Mr. Nayak be sent to a Federal Correctional Institution which has the long-term Residential Drug Abuse Program (RDAP). As is clear from the Pre-Sentence Report, Mr. Nayak suffers from inappropriate use of alcohol and prescription controlled substances. Without doubt he became a substantial substance abuser during the course of this investigation. A goal of the Court must be to assure that, upon the conclusion of whatever sentence the Court deems just and reasonable under the circumstances, it ought to include a full drug

rehabilitation program so Mr. Nayak returns to society without any need to abuse controlled substances of any kind.

## IV. CONCLUSION

When each of these factors is considered, and particularly the strong evidence of a Guidelines calculation which substantially overstates the seriousness of the offense, we respectfully ask the Court to calculate a variance or downward departure from the advisory Guideline level in imposing the sentence upon Mr. Nayak. We ask the Court to recommend that the Bureau of Prisons assign Mr. Nayak to a Federal Correctional Institution which is relatively close to his family and further to recommend his participation in the Residential Drug Abuse Program at that institution.

Dated:  January 14, 2014		Respectfully submitted,

						RAGHUVEER NAYAK

						By:	s/ Thomas K. McQueen
							Thomas K. McQueen

Thomas K. McQueen
Law Offices of Thomas K. McQueen, PC
135 S. LaSalle Street, Suite 3200
Chicago, IL  60603
(312) 360-5025
tkm@tmcqueenlaw.com
ARDC No. 1869671

Joseph J. Duffy
Stetler Duffy & Rotert Ltd.
10 S. LaSalle Street, Suite 2800
Chicago, IL 60603
(312) 338-0204
jduffy@sdrlegal.com